UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SARAH BONES, in her Personal Capacity, and as Personal Representative of the Estate of JOSHUA BONES, deceased; C.G., a minor, by and through his Guardian, SARAH BONES; and T.G., a minor, by and through his Guardian, SARAH BONES, | Case No.: 2:24-CV-00110 |
| Plaintiffs, | DEFENDANT H.I.G. CAPITAL, LLC'S MOTION TO DISMISS PURSUANT TO RULES 12(B)(2) AND 12(B)(6) |
| v. | |
| H.I.G. CAPITAL, LLC; WELLPATH; COUNTY OF CLALLAM, WASHINGTON, a Political Subdivision of the State of Washington; BILL BENEDICT; DON WENTZEL; TYLER CORTANI; LETICIA RUBALCAVA; KRISTIN MICHELLE PUHL; ALICIA C. LONG; EDWARD S. BERETTA; LINSEY JANE MONAGHAN; TAMARA VANOVER; KATHERINE E. JONES; and JOHN DOES 1-10, | NOTE ON MOTION CALENDAR: MARCH 22, 2024 |
| Defendants. | |

**DEFENDANT H.I.G. CAPITAL, LLC'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(2) FOR LACK OF PERSONAL JURISDICTION, OR, IN THE ALTERNATIVE, UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM**

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

# **TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................1

II.  PROCEDURAL HISTORY ....................................................................3

III. STATEMENT OF FACTS.......................................................................3

    A.   Facts as Alleged in Plaintiffs' Complaint.................................3

    B.   Facts Relevant to Personal Jurisdiction ...................................5

IV.  AUTHORITY AND ARGUMENT ..........................................................9

    A.   This Court Lacks Personal Jurisdiction Over HIG ..................9

        1.   Legal Standard and Plaintiffs' Burden.........................9

        2.   Plaintiffs Have Not Alleged a Basis for General Jurisdiction.........................11

        3.   H.I.G.'s Forum Contacts Will Not Sustain Specific Jurisdiction....................12

        4.   Wellpath's Forum Contacts May Not Be Imputed to HIG. ...........................14

            a.   No Facts Support Veil Piercing ..........................14

            b.   Plaintiffs' Agency Theory Fails.........................17

    B.   Alternatively, Plaintiffs Have Failed to State a Plausible Claim Against HIG Pursuant to Fed. R. Civ. P. 12(b)(6) ......................19

        1.   Legal Standard and Plaintiffs' Burden.........................19

        2.   Plaintiffs Failed to Establish an Alter Ego or Agency Relationship between HIG and Wellpath ..................20

        3.   Section 1983 Claims Against HIG Fail as the Matter of Law .........................22

            a.   Plaintiffs Cannot Allege HIG Acted Under the Color of State Law.....22

            b.   Plaintiffs Have Not Alleged Proximate Cause ....................24

        4.   Plaintiffs' Negligence Claim (Count 1) Fails.........................24

    C.   Leave to Amend Should Not Be Allowed ...............................25

V.   CONCLUSION....................................................................................25

---

DEFENDANT H.I.G. CAPITAL, LLC'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Anderson v. Cnty. of Fresno*,
   No. 121CV01134ADASAB, 2023 WL 2761168, at *71 (E.D. Cal. Apr. 3, 2023), report and
   recommendation adopted, 2023 WL 4637099 (E.D. Cal. July 20, 2023) ................................ 2

*Anderson v. Cnty. of Fresno*,
   No. 121CV01134ADASAB, 2023 WL 2761168 (E.D. Cal. Apr. 3, 2023) ........................... 17

*Armstrong v. Atrium Med. Corp.*,
   No. 1:22-cv-03007-MKD, 2022 WL 16648824 (E.D. Wash. Oct. 26, 2022) ...... 10, 11, 12, 15

*Ashcroft v. Iqbal*,
   129 S.Ct. 1937 (2009) ......................................................................................... 19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................... 19

*BNSF Ry. Co. v. Tyrrell*,
   137 S. Ct. 1549 (2017) ........................................................................................ 10

*Bristol-Myers Squibb Co. v. Super. Ct.*,
   137 S. Ct. 1773 (2017) ................................................................................. *passim*

*Campagnolo S.R.L. v. Full Speed Ahead, Inc.*,
   No. C08-1372-RSM, 2010 WL 2079694 (W.D. Wash. May 20, 2010), *aff'd,* 447 Fed. Appx.
   814 (9th Cir. 2011) ....................................................................................... 17, 18

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) .................................................................................. 9, 10, 11

*Eat Right Foods, Ltd v. Whole Foods Mkt. Servs., Inc.*
   No. C13-2174RSM, 2015 WL 11233198 (W.D. Wash. Feb. 18, 2015) ............................ 19

*Est. of Ricardez v. Cty. of Ventura*,
   No. 20-00079, 2020 WL 3891460 (C.D. Cal. June 24, 2020), cert. denied *sub nom.*, 2020 WL
   7862129 (C.D. Cal. Aug. 6, 2020) .................................................................... 2, 25

*Estate of Sarah R. Seybold v. Tazewell County*,
   Case No. 1:20-01386, 2022 WL 68385 (Central Ill. Jan. 6, 2022) ......................................... 2

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021) ........................................................................................ 10

*Francine Bible-Marshal v. Montgomery County*,
   Case No. 4:20-cv-00028, ECF No. 47, slip op. (S.D. Tex. Sept. 28, 2020) .......................... 2

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

*Franklin v. Fox*,
  312 F.3d 423 (9th Cir. 2002) ..................................................................24

*Fuhrman v. Mawyer*,
  No. 1:21-cv-02024, 2023 WL 5672314 (M.D. Pa. Sept. 1, 2023)...................16, 17

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) ..................................................................13

*Harvey v. Harvey*,
  949 F.2d 1127 (11th Cir. 1992).................................................................22

*King Cty. v. Viracon, Inc.*,
  No. 2:19-cv-508-BJR, 2019 WL 5569675 (W.D. Wash. Oct. 29, 2019).........9, 14

*Kirtley v. Rainey*,
  326 F.3d 1088 (9th Cir. 2003) .......................................................22, 23, 24

*Lang v. Strange*,
  No. 3:21-cv-05286, 2021 WL 3288093 (W.D. Wash. Aug. 2, 2021)...................25

*LNS Enterprises LLC v. Continental Motors, Inc.*,
  22 F.4th 852 (9th Cir. 2022) ...........................................................10, 11, 12

*Maring v. PG Alaska Crab Inv., Co., LLC*,
  No. C05-326JLR, 2006 WL 1940991 (W.D. Wash. July 11, 2006)...............15, 16

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
  647 F.3d 1218 (9th Cir. 2011) .................................................................12

*Meisel v. M & N Mod. Hydraulic Press Co.*,
  645 P.2d 689 (Wn. 1982).......................................................................14, 15

*Minton v. Ralston Purina Co.*,
  47 P.3d 556 (Wn. 2002).......................................................................15, 21

*Morgan v. Burks*,
  611 P.2d 751 (Wn. 1980).........................................................................15

*Newland v. Dalton*,
  81 F.3d 904 (9th Cir. 1996) .....................................................................25

*Pebble Beach Co. v. Caddy*,
  453 F.3d 1151 (9th Cir. 2006) .................................................................12

*Price v. Hawaii*,
  939 F.2d 702 (9th Cir. 1991) .................................................................23

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) ........................................ 11, 14, 15, 16

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ...............................................5

*Seabourn Cruise Line Ltd. v. Goldring*,
    No. 2:22-cv-00999, 2022 WL 16579558 (W.D. Wash. Oct. 11, 2022) ................................20

*Sutton v. Providence St. Joseph Med. Ctr.*,
    192 F.3d 826 (9th Cir. 1999) ...............................................22

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ...............................................19

*Truckweld Equip. Co., Inc. v. Olson*,
    618 P.2d 1017 (Wn. App. 1980) ...............................................14

*U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*,
    971 F.2d 244 (9th Cir. 1992) ...............................................3

*Uni-Com Northwest, Ltd. v. Argus Publishing Co.*,
    737 P.2d 304 (Wn. App. 1987) ...............................................18

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ...............................................21

*Walden v. Fiore*,
    571 U.S. 277 (2014) ...............................................10

*West v. Atkins*,
    487 U.S. 42 (1988) ...............................................22

*Williams v. Canadian Fishing Co., Ltd.*,
    509 P.2d 64 (Wn. App. 1973) ...............................................14

**Statutes**

42 U.S.C. § 1983 ........................................ 3, 22, 23, 24

Wash. Rev. Code Ann. § 4.28.185 ...............................................19

**Rules**

Fed. R. Civ. P. 8 ...............................................19

Fed. R. Civ. P. 12 ........................................ 1, 2, 9, 19

DEFENDANT H.I.G. CAPITAL, LLC'S MOTION TO DISMISS - iv

1   Defendant H.I.G. Capital, LLC ("**HIG**") submits this Motion to Dismiss Plaintiffs'

2   Complaint, (ECF No. 1-1), pursuant to Federal Rules of Civil Procedure, Rule 12(b)(2) for lack of

3   personal jurisdiction, or, in the alternative, pursuant to Rule 12(b)(6) for failure to state a claim.

## I.  INTRODUCTION

5   HIG is a leading global alternative investment firm. It provides investment management,

6   advisory, and related services to investment funds ("**Investment Funds**") that invest in various

7   businesses referred to as "portfolio companies" ("**Portfolio Companies**"). HIG also provides

8   similar advisory services ("**Services**") to its Portfolio Companies, including over 400 Portfolio

9   Companies over the last 30 years, and including what Plaintiffs generically refer to in their

10  Complaint as "Wellpath" ("**Wellpath**"), a leading medical and mental healthcare provider to

11  correctional facilities. However, HIG *does not* hold any ownership interest in the Portfolio

12  Companies, including Wellpath. Nor is HIG involved in Portfolio Companies' day-to-day

13  operations, including Wellpath's.

14  Notwithstanding HIG's far-removed role as a mere private equity sponsor and investment

15  adviser, Plaintiffs seek to hold HIG responsible for the death of Joshua Bones ("**Bones**" or the

16  "**Decedent**") in the Clallam County Jail (the "**Jail**"), claiming that HIG violated the Decedent's

17  civil rights and wrongfully caused his death. Plaintiffs' misguided and factually unsupported

18  theories include casually and mistakenly labeling Wellpath an *alter ego* and/or an agent of HIG,

19  or, even more outlandishly, claiming that HIG is a state actor.

20  Plaintiffs' claims against HIG must be dismissed for two independent reasons because

21  Plaintiffs do not—*and cannot*—allege or provide any factual basis for haling HIG into a

22  Washington court or holding HIG responsible for any of the alleged wrongdoings.

First, this Court lacks both general and specific personal jurisdiction over HIG.

Additionally, this Court cannot impute the forum contacts of Defendant Wellpath to HIG, under

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

either a veil piercing theory or otherwise, to exert personal jurisdiction over HIG. Consequently, HIG must be dismissed pursuant to Rule 12(b)(2).

The second independent basis warranting dismissal is Plaintiffs' complete failure to state a claim against HIG. Indeed, despite a laundry list of boilerplate and conclusory *alter ego* and agency allegations, Plaintiffs fail to allege a single fact supporting their outlandish notion that HIG, an entity far removed from the corporate structure of Wellpath's day-to-day operations, can or even should be held legally liable for an inmate's suicide. Further, Plaintiffs' threadbare and conclusory allegations do not support a reasonable inference that HIG was a state actor or acting under the color of law, that HIG owed the Decedent a duty, or that HIG was the proximate cause of the alleged injuries. Consequently, HIG must be dismissed pursuant to Rule 12(b)(6).

Numerous other courts have dismissed similar actions against HIG arising from almost identical allegations. *See, e.g., Est. of Ricardez v. Cty. of Ventura*, No. 20-00079, 2020 WL 3891460, at *7 (C.D. Cal. June 24, 2020), cert. denied *sub nom.*, 2020 WL 7862129 (C.D. Cal. Aug. 6, 2020) (dismissal with prejudice for failure to allege an *alter ego* or agency relationship between HIG and CFMG and for failure to allege that HIG acted under color of law); *see also Anderson v. Cnty. of Fresno*, No. 121CV01134ADASAB, 2023 WL 2761168, at *71 (E.D. Cal. Apr. 3, 2023), report and recommendation adopted, 2023 WL 4637099 (E.D. Cal. July 20, 2023) (inmate death case, dismissing a similar complaint as to HIG); *Francine Bible-Marshal v. Montgomery County*, Case No. 4:20-cv-00028, ECF No. 47, slip op. at p. 7 (S.D. Tex. Sept. 28, 2020) (same) (attached as **Appendix 1**); *Estate of Sarah R. Seybold v. Tazewell County*, Case No. 1:20-01386, 2022 WL 68385, at *7-11 (Central Ill. Jan. 6, 2022) (same).[1]

---

[1] When deciding a motion to dismiss under Rule 12(b)(6), a court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

In sum, Plaintiffs fail to articulate any viable claims against HIG. This is not surprising because HIG lacks any proximate—or, in reality, actual—connection to the conduct alleged by Plaintiffs. Accordingly, HIG respectfully requests that the Court grant its Motion and dismiss all claims against HIG with prejudice.

## II.    **PROCEDURAL HISTORY**

On January 8, 2024, Plaintiffs commenced the present lawsuit on behalf of the Decedent, by filing a Complaint in the Superior Court for the State of Washington for the County of Jefferson entitled *Sarah Bones, et al. v. H.I.G. Capital, LLC, et al.*, Case No. 24-2-00009-16. The Complaint alleges the following causes of action arising from Bones' death: (1) "Negligence;" (2) "42 U.S.C. § 1983" (no cause of action specified); and (3) "42 U.S.C. § 1983 - Unconstitutional Policy, Custom, or Procedure (*Monell*)." *See* Dkt. #1-1. Only Counts 1 and 2 are asserted against HIG. Plaintiffs did not serve the correct entity[2]; however, HIG eventually received a copy of the Complaint in Miami, Florida, and on January 25, 2024, removed this case to this Court based on federal question jurisdiction. Dkt. #1. Plaintiffs did not move to remand the case.

## III.    **STATEMENT OF FACTS**

A.   **FACTS AS ALLEGED IN PLAINTIFFS' COMPLAINT**

Plaintiffs allege that on July 20, 2022, officers responded to a domestic dispute at the Bones' residence after Sarah Bones reported that Bones, who suffered from serious mental health conditions, was refusing to leave and had armed himself with a firearm. (Dkt. #1-1, Compl. ¶¶ 47-

---

direct relation to matters at issue." *U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

[2] Plaintiffs served "H.I.G. Capital Management, LLC," a separate and distinct legal entity, rather than Defendant HIG. *See* Dkt. #2-1 at 39 (Service of Process Transmittal Summary). HIG is not registered to do business in Washington. *See infra* Siegel Decl. ¶ 4.

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

48). On July 21, 2022, following another encounter with armed and dangerous Bones, the officers took him into custody, and eventually, he was booked into the Jail. (*Id.*, ¶¶ 52,54).

Plaintiffs allege Wellpath entered into a contract with Defendant Clallam County ("**Clallam County**") to provide medical, dental, and mental health services for those incarcerated and detained in the Jail. (*Id.*, ¶¶ 4, 31). Plaintiffs also allege that Wellpath was "acquired by Defendant H.I.G.," a private equity firm, and that HIG "is the alter ego of Wellpath." (*Id.*, ¶¶ 4, 22). Plaintiffs also claim that HIG is a state actor. (*Id.*, ¶ 30). These conclusory allegations are wholly unsupported and, in fact, are directly contradicted both by Plaintiffs' detailed allegations that HIG is a private equity firm and the undisputed evidence proffered by HIG in support of this Motion.

Notably, Plaintiffs' *alter ego* allegations are limited to a laundry list of boilerplate statements, including that Wellpath "was and is owned and controlled by HIG" and "acts on behalf of HIG." (*Id.*, ¶¶ 21, 22). According to the Complaint, HIG controls Wellpath "by placing its in-house professional and expertise as board members of Wellpath." (*Id.*, ¶¶ 22-24). However, the Complaint is devoid of any support for these summary allegations.

Plaintiffs also baselessly conclude that "HIG's use of Wellpath is but a mere shell, an instrumentality or conduit for the business of financially profiting from providing mental/medical care to the mentally ill," (*id.*, ¶ 25), and that "HIG uses its corporate entity as a shield" and "[r]ecognition of H.I.G. as a separate corporate entity would promote injustice." (*Id.*, ¶¶ 28, 29). To further muddy the waters, Plaintiffs' other allegations recognize that Wellpath still exists as a separate entity and is the entity contracted to provide healthcare to the Jail. (*See id.*, ¶¶ 4, 19-21, 26). To further the confusion, in the paragraph directly following Plaintiffs' allegation that

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

Wellpath is nothing more than a "mere shell," Plaintiffs affirmatively allege that Wellpath is estimated to generate $1.5 *billion* annually. (*Id.* ¶¶ 25-26).

Plaintiffs' agency allegations are similarly devoid of any substance. Plaintiffs allege, without support, that "Wellpath [and its employees] … are agents of [HIG]" and conclude that, therefore, "HIG is responsible for their conduct." (*Id.*, ¶¶ 32, 33). Even more confusing is Plaintiffs' allegation that "[e]ach defendant was, and is, the agent of the other and at all relevant times was acting as the agent and on behalf of the other." (*Id.*, ¶ 32).

In sum, the Complaint lacks any specific, non-boilerplate factual allegations against HIG. Instead, throughout the entirety of the remaining paragraphs, Plaintiffs do not mention any HIG-specific conduct or wrongdoing, instead lumping it in with the other defendants by referring to them collectively as "Defendants."

B. **FACTS RELEVANT TO PERSONAL JURISDICTION**

Throughout the Complaint, Plaintiffs improperly lump Wellpath and HIG together to impute Wellpath's alleged actions or inactions forming the basis of Plaintiffs' lawsuit to HIG. However, HIG had absolutely no involvement in any of the underlying acts—Wellpath is not the *alter ego* of HIG, and neither Wellpath nor any of its employees are HIG's agents.

HIG is a global alternative investment private equity firm founded in 1993, with its principal place of business in Miami, Florida. (*See* Declaration of Richard Siegel, Esq. in Support of Defendant H.I.G. Capital, LLC's Motion to Dismiss ["**Siegel Decl.**"] ¶ 2).[3] HIG is a Delaware limited liability company. (*Id.*, ¶ 3). HIG is not registered to do business in Washington and does

---

[3] A court may consider the parties' affidavits and other evidence when making determinations regarding personal jurisdiction. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

not have offices in Washington. (*Id.*, ¶ 4). Nor does HIG have any employees who primarily work in Washington or are based out of Washington. (*Id.* ¶ 5).

HIG is a private equity sponsor and investment manager. (*Id.*, ¶ 6). HIG provides investment management Services to Investment Funds that invest in various Portfolio Companies. (*Id.*). The Investment Funds are set up as limited partnerships and are separate and distinct legal entities from HIG. (*Id.*, ¶ 7). Likewise, the Portfolio Companies are separate and distinct legal entities from HIG. (*Id.*, ¶ 8).

HIG does not hold any ownership interest in the Investment Funds or in the Portfolio Companies it manages and sponsors. (*Id.*, ¶ 9). Instead, as a sponsor, HIG brings a combination of capital markets expertise, various important contacts, and strategies for operational improvement to the Portfolio Companies, including recommendations to improve a company's capital structure and balance sheet as well as strategic initiatives. (*Id.*). However, the Portfolio Companies' day-to-day management and operational control remains with each company's management team. (*Id.*).

One of the Portfolio Companies that HIG provides Services to is what Plaintiffs generically refer to in their Complaint as "Wellpath." (*Id.*, ¶ 12). As the investment adviser to the Investment Fund, which is the equity sponsor of Wellpath, HIG appoints several members to Wellpath's board of directors. (*Id.*, ¶ 14). These HIG-appointed board members are not employees or executives of Wellpath and are not involved in Wellpath's day-to-day operations. (*Id.*). Rather, this is a normal practice that facilitates the provision of HIG's Services to both the Investment Fund and Wellpath, which it has done for each of its more than 400 Portfolio Companies over the last 30 years. (*See id.*, ¶¶ 9-11, 15-16, 23).

As with its other Portfolio Companies, HIG provides Services to Wellpath under arms-length consulting agreements. (*Id.*, ¶ 15). Under the consulting agreements, HIG consults with

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

Wellpath's management regarding Wellpath's strategic direction and investment and transactional opportunities. (*Id.*, ¶ 16). However, in consulting with Wellpath, HIG is in no way involved with Wellpath's routine day-to-day operations, which are solely the responsibility of Wellpath's employees, executives, and management teams. (*Id.*, ¶¶ 9, 16).

HIG had absolutely no involvement in the underlying acts that form the basis of Plaintiffs' claims. For example, and despite Plaintiffs' allegations to the contrary, (*see* Compl. ¶ 31), Wellpath—not HIG—enters into contracts and business agreements, including agreements to provide health care services, *without* requiring approval from HIG, including through one of its affiliated companies, the contract with Clallam County. (Siegel Decl. ¶ 19). Wellpath is solely responsible for managing and supervising the conduct, policies, and practices of its employees, independent contractors, and agents, including those that provide medical and mental healthcare at the Jail. (*Id.*, ¶ 20).

HIG, on the other hand, is not a party to the contract between Wellpath and Clallam County and has no obligations, duties, or rights under that contract. (*Id.*, ¶ 25). Indeed, HIG does not provide and has never provided medical care or employ any medical professionals. (*Id.*, ¶ 24). Nor does HIG employ or pay any of Wellpath's employees or independent contractors. (*Id.*, ¶ 33). More specifically, HIG has never been responsible, contractually or otherwise, for developing policies and procedures affecting the mentally ill in custody and/or for providing continuity of care to detainees within Clallam County or anywhere else. (*Compare* Compl. ¶ 4 *with* Siegel Decl. ¶ 29). Nor has HIG ever been responsible for developing policies and procedures for providing medical, dental, or mental health care to anyone, including prisoners or detainees, within Clallam County or anywhere else. (Siegel Decl. ¶ 29.).

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

Instead, Wellpath, through one of its affiliated companies, was solely responsible for entering into the contract at issue with Clallam County. (*Id.*, ¶ 19). Wellpath is also solely responsible for performing under that contract, including creating and enforcing any applicable policies or procedures, as well as hiring, firing, supervising, and overseeing its employees, independent contractors, and agents. (*Id.*, ¶¶ 19-20, 25, 30-31). Moreover, no HIG employee or agent ever came into contact with the Decedent or had any involvement in his medical or mental health care or the policies that allegedly contributed to his death. (*Id.*, ¶ 35).

It is undisputed that Wellpath is and always has been a separate and distinct legal entity from HIG. (*See id.*, ¶¶ 8-9, 17-18, 21-22, 27-28, 33, 36-37). HIG does not hold any ownership interest in Wellpath. (*Id.*, ¶ 9). Wellpath maintains separate and independent by-laws, corporate records, and financial records. (*Id.*, ¶ 18). HIG and Wellpath do not share any common business addresses, offices, or bank accounts. (*Id.*, ¶ 28). Wellpath maintains its own officers and management team, including, contrary to Plaintiffs' Complaint, its Chief Financial Officer. (*Id.*, ¶ 21). HIG does not employ or pay any of Wellpath's employees or independent contractors. (*Id.*, ¶ 33). HIG does not jointly own any property or assets with Wellpath. (*Id.*, ¶ 36). Moreover, HIG maintains its own bank accounts, does not commingle its funds or other assets with Wellpath, is registered as an investment adviser with the SEC, and follows GAAP accounting principles. (*Id.*, ¶ 37). In sum, contrary to Plaintiffs' spurious allegations, Wellpath is not controlled by HIG. (*See id.*, ¶¶ 9, 11, 14, 16, 19-20).

Plaintiffs also allege that Wellpath acts on behalf of HIG and is otherwise HIG's agent for purposes of providing the services at the heart of Plaintiffs' claims. This is false. HIG has never given Wellpath any authority, express or implied, to act on HIG's behalf. (*Id.*, ¶¶ 26, 32). Further, Wellpath is not now, nor has it ever been, an agent of HIG. (*Id.*, ¶ 32). Wellpath is not, nor has it

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

ever been, authorized to bind HIG to any agreements or enter into any contracts on HIG's behalf. (*Id.*). HIG has also never authorized a Wellpath employee to act as an agent on behalf of HIG. (*Id.*, ¶ 34). And, as mentioned above, HIG does not control the manner of performance of or has any involvement in Wellpath's day-to-day operations.

In short, Wellpath, which according to Plaintiffs' Complaint generates $1.5 billion of annual revenue, (*see* Compl. ¶ 26), is a large commercial enterprise that employs over 15,000 individuals through twenty-plus companies in 37 states across America and Australia, and cares for nearly 300,000 patients each day, (Siegel Decl., ¶ 22). Wellpath is also one of more than 400 Portfolio Companies that HIG has provided Services to over the last 30 years. (*Id.*, ¶ 23). To suggest that Wellpath and HIG are interchangeable, that Wellpath is the *alter ego* or agent of HIG, or that Wellpath is "a mere shell" whose separate corporate existence must be ignored, is altogether unsupported by any specific factual allegations and is entirely controverted both by Plaintiffs' own allegations *and* HIG's undisputed evidence.

## IV.    AUTHORITY AND ARGUMENT

### A.    THIS COURT LACKS PERSONAL JURISDICTION OVER HIG

HIG should be dismissed for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). As set forth below, this Court has neither general nor specific personal jurisdiction over HIG.

#### 1.    Legal Standard and Plaintiffs' Burden

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Washington's "long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the constitution." *King Cty. v. Viracon, Inc.*, No. 2:19-cv-508-BJR, 2019 WL 5569675, at *2 (W.D. Wash. Oct. 29, 2019). Although personal jurisdiction may be asserted where authorized by state law, "[i]t has long

STOKES LAWRENCE, P.S.
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

been established that the Fourteenth Amendment limits the personal jurisdiction of state courts." *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1779 (2017). To find a nonresident defendant subject to its jurisdiction, the defendant must have sufficient minimum contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *LNS Enterprises LLC v. Continental Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)) (internal quotation marks omitted).

Through a series of recent watershed decisions, the Supreme Court has articulated strict due process limits on personal jurisdiction. *See, e.g., Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021); *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549 (2017); *Bristol-Myers*, 137 S. Ct. 1773; *Daimler*, 571 U.S. 117. As discussed below, this line of decisions eliminates any basis for Plaintiffs to hale HIG into a Washington court based upon Plaintiffs' allegations and the factual record.

Where a defendant objects to personal jurisdiction, the plaintiff bears the burden of establishing a prima facie showing of jurisdiction. *See LNS Enterprises*, 22 F.4th at 862. A court "cannot 'assume the truth of allegations in a pleading which are contradicted by affidavit' or declaration." *Id.* at 858 (citation omitted); *Armstrong v. Atrium Med. Corp.*, No. 1:22-cv-03007-MKD, 2022 WL 16648824, at *2 (E.D. Wash. Oct. 26, 2022) ("A plaintiff cannot make the requisite showing by relying solely on the bare allegations of [his or her] complaint."). If a court determines to decide the motion on the basis of affidavits, without an evidentiary hearing, Plaintiffs must make "a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss." *Id.* at 862 (citation and quotation marks omitted). Plaintiffs cannot meet their burden here.

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

### 2. Plaintiffs Have Not Alleged a Basis for General Jurisdiction.

There are two types of personal jurisdiction: general and specific. *See LNS Enterprises*, 22 F.4th at 858. For defendants such as HIG, the "paradigm" forums that may exercise general jurisdiction over a corporation are the corporation's place of incorporation and its principal place of business. *See BNSF*, 581 U.S. at 413; *Daimler*, 571 U.S. at 137; *Armstrong*, 2022 WL 16648824, at *3 n.3 ("It is the rare case in which general personal jurisdiction is proper over a foreign corporation which does not have its principal place of business in the jurisdiction in which the lawsuit is filed.").

Plaintiffs cannot establish general jurisdiction over HIG in Washington based upon the Supreme Court's test in *Daimler* and its progeny. Notably, the Supreme Court in *Daimler* rejected the Ninth Circuit's broader test allowing for general jurisdiction wherever a defendant entity "engages in a substantial, continuous, and systematic course of business," finding that it would be "unacceptably grasping." 571 U.S. at 137-38 (citation and internal quotation marks omitted).[4]

HIG is a Delaware limited liability company with its principal place of business in Florida. (Siegel Decl. ¶¶ 2-3; *see also* Compl. ¶ 41). A corporation is subject to general jurisdiction (*i.e.*, where it is "essentially at home") only where it is incorporated or headquartered and, "in an exceptional case," in another place where its operations are "so substantial and of such a nature as to render the corporation at home[.]" *Daimler*, 571 U.S. at 139 n.19.[5] Here, HIG is not registered to do business in Washington; it has no offices in Washington, and has no employees who primarily work in Washington. (Siegel Decl. ¶¶ 4-5). Thus, HIG is not "at home" in Washington,

---

[4] HIG does not engage in substantial, continuous, and systematic business in Washington and the Complaint contains no allegations to the contrary.

[5] This is not the type of "exceptional case" that would subject HIG to general, all-purpose jurisdiction in a forum other than its principal place of business or place of incorporation. *See, e.g., Armstrong*, 2022 WL 16648824, at *3 n.3.

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

and it would violate "fair play and substantial justice" to treat HIG as though it was. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015).

### 3.    H.I.G.'s Forum Contacts Will Not Sustain Specific Jurisdiction.

The second type of personal jurisdiction—specific jurisdiction—authorizes personal jurisdiction for cases that "arise out of or relate to the defendant's contacts with the *forum*." *Bristol-Myers*, 137 S. Ct. at 1780 (citation, quotation marks, and brackets omitted). The Ninth Circuit has established a three-part test to determine if a nonresident defendant has sufficient minimum contacts to meet the due process standard for the exercise of specific personal jurisdiction:

> (1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*LNS Enterprises*, 22 F.4th at 859.      Indeed, if any of these requirements are not satisfied, finding personal jurisdiction in the forum would "deprive the defendant of due process of law." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (citation omitted). Plaintiffs "bear[] the burden of satisfying the first two prongs." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (citations omitted).

In tort claims, the first prong is analyzed under the purposeful direction test. *See Armstrong*, 2022 WL 16648824, at *4. To satisfy this prong, a plaintiff must produce evidence that the defendant's actions outside the forum state were directed at the forum. *See id.*

Here, there is no basis to exercise specific jurisdiction over HIG because HIG did not purposefully direct any of its activities to Washington state under the first prong, and Plaintiffs' claims do not arise out of or relate to any of HIG's forum-related activities under the second prong. (*See* Siegel Decl. ¶¶ 3-5, 9-14, 19-20, 24-25, 29-35). In *Bristol-Myers*, the Supreme Court

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

explained that the due process limits on personal jurisdiction are not just "a guarantee of immunity from inconvenient or distant litigation," but also "a consequence of territorial limitations on the power of the respective States." *Bristol-Myers*, 137 S.Ct. at 1780. Thus, where there is no "'affiliation between the forum and the underlying controversy,'" then "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* at 1781 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Moreover, the required connection between HIG's alleged forum contacts and the Plaintiffs' claims is completely lacking. Plaintiffs' alleged claims relate to the provision of medical care to inmates and detainees in Clallam County Jail—more specifically, to the Decedent. (*See* Compl. *passim*). However, HIG is not a party to and did not approve the contract at issue with Clallam County to provide such health care, nor does it have any obligations, duties, or rights under the contract. (Siegel Decl. ¶¶ 19, 25). Further, HIG employs no medical professionals and has never provided medical care in Clallam County or anywhere else, and HIG had no involvement in developing the alleged policies and procedures at issue. (*Id.*, ¶¶ 24, 29, 35).

HIG does not and has not employed any of the individual defendants that are alleged to have acted negligently in connection with the provision of medical and mental health care to the Decedent, and no HIG employee or agent has ever come into contact with the Decedent. (*Id.*, ¶¶ 30-35). In short, HIG had absolutely no involvement in or responsibility for the actions relating to Plaintiffs' claims. (*See id.*, ¶¶ 9-11, 14, 16, 19-21, 25, 32-35).

HIG thus lacks any forum contacts that relate to the claims in suit here, and specific jurisdiction is precluded. Nor can Plaintiffs predicate specific jurisdiction on HIG's forum contacts as to other matters, such as its relationship with Wellpath or the Services HIG provides to Portfolio Companies, including Wellpath, which are far removed from the day-to-day operations that

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

allegedly form the basis of Plaintiffs' claims. To do so would be little more than the "loose and spurious form of general jurisdiction" that *Bristol-Myers* rejected when it held that the constitutional requirement of a nexus between a defendant's forum contacts and the plaintiff's claims cannot be relaxed based on the extent of a defendant's non-claim related contacts. 137 S. Ct. at 1781. The Due Process Clause thus forbids any attempt to establish personal jurisdiction in Washington based on HIG's purported forum contacts.

### 4. Wellpath's Forum Contacts May Not Be Imputed to HIG.

While Plaintiffs cannot establish general or specific personal jurisdiction over HIG based on HIG's contacts with Washington, HIG anticipates Plaintiffs will attempt to argue Wellpath's forum contacts can be imputed to HIG by piercing the corporate veil and disregarding Wellpath's and HIG's corporate forms. For example, Plaintiffs allege HIG controlled Wellpath, HIG was an *alter ego* of Wellpath, and/or Wellpath acted as HIG's agent. (*See* Compl. ¶¶ 21-26, 28-30, 32-35, 38). However, as Washington courts have long recognized, "ownership of a subsidiary by a parent, with nothing more, is not sufficient to constitute 'doing business' for jurisdictional purposes." *Williams v. Canadian Fishing Co., Ltd.*, 509 P.2d 64, 67 (Wn. App. 1973); *accord Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015); *King Cty.*, 2019 WL 5569675, at *5. Here, the relationship between HIG and Wellpath is even more attenuated than that of a parent-subsidiary because HIG does not have an ownership interest in Wellpath and, instead, provides Wellpath with Services that are far removed from Wellpath's day-to-day operations. Thus, there is no factual or legal basis to pierce the corporate veil to impute Wellpath's forum contacts to HIG.

### a. No Facts Support Veil Piercing

In Washington, one corporation cannot be held liable for the debts of another except in extraordinary circumstances. *See Meisel v. M & N Mod. Hydraulic Press Co.*, 645 P.2d 689, 692–93 (Wn. 1982). Limited liability for corporations is at the "very foundation of the entity concept."

*Truckweld Equip. Co., Inc. v. Olson*, 618 P.2d 1017, 1021 (Wn. App. 1980). To pierce the corporate veil in Washington, a party must prove two essential elements: (1) an abuse of the corporate form, which typically involves fraud, misrepresentation, or some form of manipulation of the corporation to violate or evade a duty; and (2) disregard must be necessary and required to prevent unjustified loss to the injured party. *See Minton v. Ralston Purina Co.*, 47 P.3d 556, 562 (Wn. 2002) (Plaintiffs "must show that there is an overt intention by the corporation to disregard the corporate entity in order to avoid a duty owed to [Plaintiffs].")); *Meisel*, 645 P.2d at 692–93; *Armstrong*, 2022 WL 16648824, at *5 (same). Moreover, "[t]he burden of proof is on the party seeking to pierce the veil." *See Maring v. PG Alaska Crab Inv., Co., LLC*, No. C05-326JLR, 2006 WL 1940991, at *6 (W.D. Wash. July 11, 2006) (citation omitted). Plaintiffs cannot satisfy their heavy burden.

"Generally, a party must show that the corporation manipulated the entities in order to avoid the legal duty." *Id.* "This may occur either because the liability-causing activity did not occur only for the benefit of the corporation, and the corporation and its controllers are thus 'alter egos'; or because the liable corporation has been 'gutted' and left without funds by those controlling it in order to avoid actual or potential liability." *Morgan v. Burks*, 611 P.2d 751, 755 (Wn. 1980).

Plaintiffs allege that HIG controls Wellpath. (Compl. ¶¶ 21-26, 33-34, 36, 38). Not only is Plaintiffs' allegation factually unsupported, (*see* Siegel Decl. ¶¶ 9, 11-12, 14, 16-21), it is insufficient to treat Wellpath as the *alter ego* or mere instrumentality of HIG. *See Minton*, 47 P.3d at 563 (noting that veil-piercing is appropriate when corporations "were attempting to perpetuate a fraud on a third party by maintaining separate identities" despite their close relationship). "Total ownership and shared management personnel are alone insufficient to establish the requisite level of control." *Ranza*, 793 F.3d at 1073. This test "envisions pervasive control over the subsidiary,

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

such as when a parent corporation 'dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation.'" *Id.* Even heavy involvement in a subsidiary's operations and active direction of micromanagement issues such as budgets and human resources is not enough to find that the subsidiary is the *alter ego* of the parent, when the parent does not direct the subsidiary's day-to-day activities. *See id.* at 1074-75; *Maring*, 2006 WL 1940991, at *6 ("A corporation can have a single shareholder, with sole power for all corporate decisions, without exposing the shareholder to liability.").

Here, Plaintiffs have failed to allege sufficient **<u>facts</u>** to permit this Court to treat Wellpath and HIG as *alter egos*. Nor can they. As detailed in Section III.B. *supra*, and in the Siegel Declaration, Wellpath is a separate and distinct legal entity that is solely responsible for its own day-to-day operations and manages its day-to-day activities independently of HIG. (*See* Siegel Decl. ¶¶ 8-9, 11, 14, 16-22, 28, 33, 36-37). Wellpath and HIG have always respected corporate formalities, and there is no evidence that HIG abused the corporate form of Wellpath to commit a fraud upon Plaintiff, or anyone else. *See supra* Sec. III.B.; Siegel Decl. *passim*. Most significantly, Wellpath is and always has been a large commercial enterprise, employing more than 15,000 individuals through twenty-plus companies in 37 states across America and Australia—none of which are HIG employees—and cares for nearly 300,000 patients daily. (Siegel Decl. ¶ 22). Plaintiffs' suggestion that Wellpath is a "mere shell," or that HIG could exert the necessary control over the day-to-day operations of a company that size to justify veil piercing is ludicrous.

A recent case involving a Portfolio Company, referred to as "Pixelle," is instructive here. *See Fuhrman v. Mawyer*, No. 1:21-cv-02024, 2023 WL 5672314 (M.D. Pa. Sept. 1, 2023). There, plaintiffs brought claims against both HIG and another private equity firm under alter ego and agency theories. HIG and the other private equity firm, referred to as the "LG Defendants," moved

to dismiss for lack of personal jurisdiction. *See id.* at \*5-12. Plaintiffs made many of the same arguments Plaintiffs do here: that the LG Defendants were alter egos of Pixelle and/or Pixelle acted as their agent due to their relationship as a private equity firm and a portfolio company. *See id.* at \*5-11. The court correctly concluded that the portfolio company's forum contacts could not be imputed to the private equity firms under either a veil piercing or agency theory. *See id.* The same outcome is warranted here.

More striking is that Plaintiffs offer nothing more than threadbare, conclusory allegations pertaining to the fraud or injustice prong they have the burden of establishing. (*See* Compl. ¶¶ 28-29). HIG has offered competent, substantial evidence that Wellpath is operated as its own distinct enterprise, corporate formalities are followed, and Wellpath's corporate form has not been used to commit fraud or for an improper purpose. *See supra* Sec. III.B. Accordingly, this Court cannot pierce the corporate veil, under an *alter ego* theory or otherwise, in order to impute Wellpath's forum contacts to HIG.

### b. Plaintiffs' Agency Theory Fails

Plaintiffs also appear to argue HIG is liable under an agency theory. Plaintiffs' Complaint includes unsupported conclusory allegations that Wellpath and its employees act as HIG's agents; therefore, HIG and Wellpath should be considered one and the same. (*See* Compl. ¶¶ 22-23, 30, 32-35, 38).[6] However, at least one court in this District has questioned whether *alter ego* and agency theories for liability in the corporate family context are in fact separate. *Campagnolo S.R.L. v. Full Speed Ahead, Inc.*, No. C08-1372-RSM, 2010 WL 2079694, at \*7 (W.D. Wash. May 20, 2010), *aff'd,* 447 Fed. Appx. 814 (9th Cir. 2011) ("It is not clear, however, that this agency analysis

---

[6] To the extent that Plaintiffs also attempt to allege ratification, their ratification allegation is limited to one conclusory assertion (Compl., ¶ 39). *See Anderson*, 2023 WL 2761168, at \*58 (finding similar allegations "insufficient and conclusory").

applies where the asserted principal and the asserted agent are separately incorporated entities.").

As *Campagnolo* explains:

> A corporation's managers always act as agents for its shareholders-the principals. Yet even where a subsidiary is wholly owned, the parent corporation-the shareholder or principal-is generally not liable for the subsidiary's torts. The purpose of incorporation is to override the common law principal-agent relationship to limit liability.

> Thus the Court doubts whether alter ego and agency theories for parent liability are in fact separate. To the extent the theories are separate, agency liability in the corporate context must require more than the agency affiliation present in all parentsubsidiary [sic] relationships.

2010 WL 2079694, at *7 (internal citations and parentheticals omitted; collecting cases); *Uni-Com Northwest, Ltd. v. Argus Publishing Co.*, 737 P.2d 304, 310 (Wn. App. 1987) (condemning attempted use of agency doctrine as "a disguised way of finding corporate disregard").

Even assuming, *arguendo*, an agency theory of liability for imputing personal jurisdiction is separate and distinct from Plaintiffs' *alter ego* theory, it still fails. "An agency relationship requires (1) consent and (2) control." *Campagnolo*, 2010 WL 2079694, at *7. Control is often the crucial factor. *Id.* Control is not established if the purported principal retains the right to supervise the purported agent merely to determine that they are performing in conformity with their obligations; rather, "control establishes agency only if the principal controls the manner of performance." *Id.* The uncontroverted evidence establishes that HIG never authorized Wellpath, or any of its employees, to act as HIG's agents, and HIG did not exert the requisite control over Wellpath to establish an agency relationship. Rather, Wellpath was and is solely responsible for dictating the manner of performance of its day-to-day operations. (Siegel Decl. ¶¶ 9-16, 19-21, 26, 30-35).

Accordingly, this Court lacks personal jurisdiction over HIG, and HIG is entitled to attorney's fees for defending this action. *See* Wash. Rev. Code Ann. § 4.28.185(5); *Eat Right*

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

*Foods, Ltd v. Whole Foods Mkt. Servs., Inc*., No. C13-2174RSM, 2015 WL 11233198, at \*2 (W.D. Wash. Feb. 18, 2015).

**B.** **ALTERNATIVELY, PLAINTIFFS HAVE FAILED TO STATE A PLAUSIBLE CLAIM AGAINST HIG PURSUANT TO FED. R. CIV. P. 12(B)(6)**

Alternatively, and without waiving the instant challenge to personal jurisdiction, the Complaint should be dismissed as to HIG for failure to state a claim upon which relief can be granted.

**1.** **Legal Standard and Plaintiffs' Burden**

Rule 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). The Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A complaint can survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A claim may be dismissed with prejudice if "amendment would be futile." *Swartz v. KPMG LLP*, 476 F.3d 756, 761 (9th Cir. 2007).

Here, Plaintiffs fail to approach the line between possibility and plausibility because they fail to plead *any* specific allegations—factual or otherwise—of HIG's alleged wrongdoing. Thus, based on the wholesale failure to plead any ultimate facts against HIG, this Court should dismiss Plaintiffs' Complaint as a matter of law.

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

**2. Plaintiffs Failed to Establish an *Alter Ego* or Agency Relationship between HIG and Wellpath**

As shown above, Plaintiffs' overarching *alter ego* allegations attempting to hold HIG liable for Wellpath's actions and, thereby, liable for the events at a single jail managed by Wellpath and the County, are conclusory at best, if not entirely absent. *See supra* at Sec. III & Sec. IV.A.4. However, even aside from the deficient and entirely confusing allegations, Washington law requires two conditions to be met <u>before</u> *alter ego* may be invoked. *See supra* at Sec. IV.A.4. Plaintiffs have failed to sufficiently allege either.

As explained above, Plaintiffs must allege facts supporting both that the defendant disregarded and misused the corporate form to avoid a legal duty to plaintiff, <u>and</u> disregard of the corporate form is necessary to prevent fraud or injustice. Facts considered when analyzing the first factor include

> commingling of funds and other assets; identity of officers and directors; full ownership by the parent; the failure to adequately capitalize a corporation; the absence of corporate assets, and undercapitalization; the use of a corporation as a mere shell, instrumentality or conduit for a single venture of another corporation; the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors; or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another.

*Seabourn Cruise Line Ltd. v. Goldring*, No. 2:22-cv-00999, 2022 WL 16579558, at *5 (W.D. Wash. Oct. 11, 2022).

Plaintiffs plead no such facts for the Court to draw the reasonable inference that the alleged misconduct satisfies Washington's stringent standard for *alter ego*. *See id.* (finding conclusory statements and formulaic recitations insufficient for personal jurisdiction). The only specific factual allegation found in the Complaint pertains to the alleged placement of a "HIG Principal" who allegedly "serves as a Chief Financial Officer and Secretary." (Compl. ¶¶ 24, 35). Putting aside the fact that this allegation is false, even if it were true, it would not satisfy Plaintiffs' burden.

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

*See Minton*, 47 P.3d at 563 (the mere fact that there is common ownership of stock or overlapping officers and employees does not, alone, justify disregard of separate entities absence evidence of fraud).

Plaintiffs' allegations of shared board members are equally unavailing. The law is clear: in the absence of evidence of actual control, courts generally presume that directors can and do "change hats" to represent each corporation separately. *United States v. Bestfoods*, 524 U.S. 51, 69 (1998). Here, the Complaint does not provide any facts, let alone purported evidence, supporting HIG's actual control over Wellpath.

Outside of these allegations, the Complaint merely recites a litany of mechanical, conclusory allegations that HIG used Wellpath as its *alter ego* and/or as a shield for liability. (*See* Compl. ¶¶ 21-26, 28-30). Nowhere, however, have Plaintiffs alleged any <u>facts</u> to actually support these conclusory allegations taken straight from the *alter ego* playbook. In fact, just the opposite is true. Plaintiffs boldly allege Wellpath generates $1.5 billion annually. (*See* Compl., ¶ 26). This hardly supports an absence of corporate assets and undercapitalization by HIG.

The second *alter ego* condition requires at least the pleading (and then proof) of specific bad faith conduct that would make it inequitable to recognize the corporate form. Plaintiffs make only a single conclusory allegation that "[r]ecognition of HIG as a separate corporate entity would promote injustice and defeat the rights and equities of persons such as Mr. Bones and Plaintiffs…." (*Id.,* ¶ 29). Other than this generic, boilerplate allegation (which again merely repeats the *alter ego* standard), no "facts" pleaded are anywhere regarding the supposed inequity that would arise from not holding HIG liable for the acts of a far downstream entity or entities of an affiliate.

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

Accordingly, because Plaintiffs have failed to adequately allege an *alter ego* relationship between HIG and Wellpath (and potentially numerous individual defendants), Plaintiffs' claims against HIG must be dismissed.[7]

### 3. Section 1983 Claims Against HIG Fail as the Matter of Law

#### a. Plaintiffs Cannot Allege HIG Acted Under the Color of State Law

Plaintiffs assert one Section 1983 claim against HIG, which requires Plaintiffs to show HIG was a "state actor": a wrongful death/denial of due process claim against HIG and all other defendants (in an undifferentiated manner) in Plaintiffs' Second Cause of Action. This claim fails because Plaintiffs have not, and cannot, allege HIG was a state actor.

A claim under Section 1983 requires a deprivation of a constitutional right under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Private individuals and entities not affiliated with a state or municipal government generally do not act "under color of state law." *See Kirtley v. Rainey,* 326 F.3d 1088, 1092 (9th Cir. 2003) (guardian *ad litem* appointed to represent a child in a state court custody proceeding did not act under color of state law); *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 843 (9th Cir. 1999) (hospital was not a state actor under Section 1983 claim).

Analysis of this issue must "start with the presumption that private conduct does not constitute governmental action[,]" *Sutton*, 192 F.3d at 836, because "[o]nly in *rare* circumstances can a private party be viewed as a 'state actor' for section 1983 purposes[,]" *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) (emphasis added). Moreover, because "private parties are not generally acting under color of state law," it is settled that "conclusory allegations unsupported

---

[7] Plaintiffs failure to establish an agency relationship is analyzed in Sec. IV.A.4(b), *supra*, and incorporated herein by reference.

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

by facts, will be rejected as insufficient to state a claim under the Civil Rights Act." *Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991). That well describes Plaintiffs' allegations in their entirety.

The actions of a private entity may only properly be attributed to the government for purposes of Section 1983 if, at the time of an alleged constitutional violation, (1) the private actor was performing a public function; (2) the private actor was engaged in joint activity with the government; (3) the private party acted under governmental compulsion or coercion; or (4) there was a sufficient nexus between the government and the private actor. *Kirtley*, 326 F.3d at 1092. Plaintiffs have the burden to demonstrate that HIG was a state actor. *Id.*

Plaintiffs failed to properly allege HIG is a state actor under any of the tests mentioned above. Plaintiffs' state actor allegations are limited to unsupported proclamations that "WELLPATH/H.I.G … provide a governmental function and stand in the same capacity as CLALLAM COUNTY in carrying out their duties at the Jail," that "WELLPATH/H.I.G… provide a governmental function and stand in the same capacity as CLALLAM COUNTY in carrying out their duties at the Jails," and "[m]edical care providers, employees and agents (such as H.I.G. and the companies it owns and controls/WELLPATH) are state actors for 42 U.S.C. § 1983 purposes acting under color of state law." (Compl., ¶¶ 4, 30; *see also id.*, ¶ 55.1[8]).

Plaintiffs' attempt to meet the public function test fails miserably.[9] Under that test, a plaintiff must establish that the private party is exercising functions traditionally and exclusively reserved to the state. *See Kirtley,* 326 F.3d at 1093. But Plaintiffs do not allege any facts to support

---

[8] Following paragraph 71, the numbering of the Complaint's paragraphs restarts at paragraph 25. Citations to paragraphs following paragraph 71 are designated with a .1 after the paragraph to indicate the citation is to one of the renumbered paragraphs.

[9] Plaintiffs do not even attempt to allege the "joint action," "nexus," or "compulsion" theories of state action.

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

a public function theory of state actor liability. It is unclear from the Complaint what HIG's alleged "function" was other than as the alleged "owner" of Wellpath (which it was not). Further, despite the above-mentioned conclusory assertions, the Complaint is devoid of *any facts* that HIG *itself* was actually employed to provide medical care or that the State delegated that function to it. In fact, any such allegations are contradicted by the detailed allegations that the HIG is a private equity firm. (Compl. ¶¶ 4, 14, 26). Further, there are no allegations that HIG is a party to the contract between Clallam County and Wellpath. (*See* Compl. ¶¶ 4, 31 (alleging that "CLALLAM COUNTY entered into a contract with Defendant WELLPATH")). Accordingly, Plaintiffs cannot support their "state actor" claim under this test.

Based on the foregoing, Plaintiffs' 1983 claim, and related demands for punitive damages and attorneys' fees, fail and should be dismissed with prejudice.

### b. Plaintiffs Have Not Alleged Proximate Cause

To state any claim under 42 U.S.C. § 1983, Plaintiffs must allege HIG was the proximate cause of the alleged constitutional violation. *See Franklin v. Fox*, 312 F.3d 423, 445-46 (9th Cir. 2002). A private party is not the proximate cause of an alleged constitutional violation where he or she does not control the decision of the state actor leading to the alleged violation. *See id*.

The Complaint is completely devoid of any factual allegations that HIG had any involvement, control, or authority over either the alleged constitutional violation.

### 4. Plaintiffs' Negligence Claim (Count 1) Fails

Like all of the other claims, Plaintiffs' Negligence claim for wrongful death falls far short of what is required.

To support a claim for negligence, Plaintiffs must allege and then prove the following: (1) the defendant owed a duty of care; (2) defendant breached that duty; (3) proximately causing; (4) the resulting injury. *Lang v. Strange*, No. 3:21-cv-05286, 2021 WL 3288093, at *4 (W.D. Wash.

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

Aug. 2, 2021). To state a claim for wrongful death based upon negligence, a plaintiff must make some minimal showing of negligence that caused the death of a decedent. *See id.* (discussing Washington's wrongful death statute).

Like their other claims against HIG, Plaintiffs' negligence claim improperly refers to "Defendants" collectively and fails to plead any specific allegations with respect to HIG. (Compl. ¶¶ 41.1-54.1). Further, although it is well-established that absent a legal duty, there can be no negligence liability for injury to a person, *see, e.g.*, *Lang*, 2021 WL 3288093, at \*5, Plaintiffs wholly fail to allege any special relationship between Bones and HIG that would give rise to a duty of care. Moreover, the existence of a duty turns on the foreseeability of the risk created by an action. *See id.* Plaintiffs fail to allege any facts to support an inference that actions taken *by HIG* could have foreseeably resulted in the alleged harm to Plaintiffs (to support existence of a duty), or that actions *by HIG* proximately caused Plaintiffs' injury. Absent such facts, no duty is owed directly by HIG to Bones, rendering Count 1 against HIG deficient as a matter of law. Accordingly, Plaintiffs' negligence claim against HIG must be dismissed.

C.     **LEAVE TO AMEND SHOULD NOT BE ALLOWED**

It is well-settled that there is no purpose in allowing a futile amendment. *Newland v. Dalton*, 81 F.3d 904, 907 (9th Cir. 1996); *Estate of Ricardez*, 2020 WL 3891460, at \*5 (no leave to amend because amendment is futile). Leave to amend in this case would be futile because the undisputed evidence establishes that this Court lacks personal jurisdiction over HIG. Furthermore, Plaintiffs have not pled and cannot plead facts to show that HIG can be held liable in this case.

## V.     <u>CONCLUSION</u>

For the reasons stated above, HIG respectfully requests this Court grant its Motion and dismiss HIG from this action for lack of personal jurisdiction, or, alternatively, for failure to state

**STOKES LAWRENCE, P.S.**
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101-2393
(206) 626-6000

a claim, with prejudice. Because dismissal is warranted for lack of personal jurisdiction, among other reasons, HIG requests to be awarded its fees.

DATED this 29th day of February 2024.

STOKES LAWRENCE, P.S.


By: /s/ Robert L. Bowman
    Robert L. Bowman (WSBA #40079)
    1420 Fifth Avenue, Suite 3000
    Seattle, WA 98101-2393
    Tel: (206) 626-6000
    Fax: (206) 464-1496
    E-mail: robert.bowman@stokeslaw.com
    E-mail: samantha.pitsch@stokeslaw.com


By: /s/ Samantha K. Pitsch
    Samantha K. Pitsch (WSBA #54190)
    1420 Fifth Avenue, Suite 3000
    Seattle, WA 98101-2393
    Tel: (206) 626-6000
    Fax: (206) 464-1496
    E-mail: robert.bowman@stokeslaw.com
    E-mail: samantha.pitsch@stokeslaw.com

*Attorneys for Defendant H.I.G. Capital, LLC*

I certify that this memorandum contains 8,092 words, in compliance with the Local Civil Rules.



*Appendix 1*

United States District Court
Southern District of Texas
**ENTERED**
September 28, 2020
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **FRANCINE BIBLE-MARSHALL,** §<br>**individually and as a representative of** §<br>**the estate of Carl Bible, and LUCKY** §<br>**STAR JOSEPHINE BIBLE** §<br> §<br> **Plaintiff,** §<br> §<br> **v.** §<br> §<br>**MONTGOMERY COUNTY,  et al.,** §<br> §<br> **Defendants.** § | | **CASE NO. 4:20-CV-0028** |

**O R D E R**

Pending before the Court is Defendant H.I.G. Capital, LLC's Motion to Dismiss, **(Instrument No. 33)**, and Montgomery County and Sheriff Rand Henderson's Motion to Dismiss, **(Instrument No. 43)**.

**I.**

**A.**

This case arises from the death of Carl Bible ("Bible"), an inmate of the Montgomery County Jail ("Jail"). (Instrument No. 30). Plaintiffs Francine Bible Marshall, individually and as a representative of the estate of Carl Bible, and Lucky Star Josephine Bible (collectively, "Plaintiffs") bring this suit seeking damages for violating Bible's constitutional rights. (Instrument No. 30 at 1).

On December 21, 2017, Bible arrived at the Jail and was in custody due to a violation of his terms of release. (Instrument No. 30 at 3). On December 22, 2017, Bible complained of body aches, wheezing, coughing, fatigue, difficulty breathing, and a stabbing pain on the right side of

his back. *Id.* at 5. Plaintiffs allege that Bible was suffering from chronic obstructive pulmonary disease and had not been seen by a healthcare provider. *Id.* at 4. Bible was scheduled to be seen by a provider, but, due to understaffing, Bible's appointment was rescheduled. *Id.* However, Plaintiffs allege that a registered nurse marked his appointment as complete and, therefore, it was never rescheduled. *Id.* On December 23, 2017, Plaintiffs allege that Bible reported symptoms of respiratory distress but was sent back to his detox cell by medical staff at the Jail. *Id.*

On December 24, 2017, Plaintiffs allege that Bible reported a severe cough. (Instrument No. 30 at 6). Bible also had an oxygen saturation reading of 88%, which was determined to be low compared to a normal reading of at least 94%. *Id.* Plaintiffs allege that Bethany Robertson, a registered nurse, prescribed Decadron to Bible without an order or examination from a physician. *Id.* at 6. Plaintiffs also allege that the Decadron is no longer available in the United States and increases a patient's risk to many infections. *Id.* Plaintiffs further allege that, while being in the Jail's custody, Bible was not seen by an appropriate provider, physician, nurse practitioner, or physician's assistant. (Instrument No. 30 at 6).

On December 25, 2017, Bible was transported to Conroe Regional Medical Center ("Conroe Regional") due to sepsis, pneumonia, and influenza. (Instrument No. 30 at 6). On December 26, 2017, Dr. Ali Bhuriwala prescribed Levaquin and Vancomycin to treat Bible's sepsis. (Instrument No. 30 at 7). On January 5, 2018, Bible died from sepsis.

Plaintiffs allege that Montgomery County, the Jail's third-party medical provider— WellPath Holdings, Inc. and WellPath, LLC (collectively, "WellPath")—and Conroe Regional failed to promptly address Bible's symptoms and perform various time-sensitive tests to treat Bible's sepsis. *Id.* at 7. Plaintiffs allege that Bible was immunocompromised and had a greater susceptibility to viruses. (Instrument No. 30 at 3). Because Bible had been an inmate at the Jail

on several occasions prior to December 2017, Plaintiffs allege that Bible's underlying health condition was well-documented at the Jail. (Instrument No. 30 at 3). Plaintiffs additionally allege that the Jail had knowledge of the spread of influenza as early as December 5, 2017, when another inmate contracted influenza and died. (Instrument No. 30 at 3). While Bible was housed in the infirmary unit, Plaintiffs allege that no influenza vaccinations or sanitization supplies were provided to inmates to prevent the spread of influenza. *Id.* at 3-4.

**B.**

On January 6, 2020, Plaintiffs filed their Complaint. (Instrument No. 1). On June 15, 2020, Plaintiffs filed their Amended Complaint. (Instrument No. 30). Plaintiffs file their suit against Defendants Montgomery County, Sheriff Rand Henderson in his individual capacity, WellPath Holdings, Inc., WellPath, LLC, Correctional Medical Group Companies, Correct Care Solutions, Conroe Regional, and H.I.G. Capital, LLC ("H.I.G. Capital"). *Id.* at 1-2.

On June 29, 2020, H.I.G. Capital filed its Motion to Dismiss. (Instrument No. 33). On June 29, 2020, Correct Care Solutions and Correctional Medical Group Companies filed its Answer to the Amended Complaint. (Instrument No. 34). On July 15, 2020, Plaintiffs filed their Motion to Dismiss Conroe Regional. (Instrument No. 36). On July 21, 2020, the Court granted their Motion and dismissed Conroe Regional. (Instrument No. 38).

On July 23, 2020, Plaintiffs filed their Response to H.I.G. Capital's Motion to Dismiss. (Instrument No. 40). On July 28, 2020, H.I.G. Capital filed its Reply. (Instrument No. 41).

On August 2, 2020, Montgomery County and Sheriff Rand Henderson filed their Motion to Dismiss. (Instrument No. 43). On August 21, 2020, Plaintiffs filed their Response. (Instrument No. 44).

## II.

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint need not contain "detailed factual allegations," but it must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When a complaint does not meet the pleading requirements of Rule 8, Rule 12(b)(6) authorizes dismissal of a civil action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must articulate "the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting Twombly, 550 U.S. at 555). Stated otherwise, in order to withstand a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010).

When ruling on a 12(b)(6) motion, the Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal citations and quotations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The Court does not resolve any disputed fact issues. *Smith v. Reg'l Transit*

*Auth.*, 756 F.3d 340, 347 (5th Cir. 2014). Instead, the Court assumes all well-pleaded facts contained in the complaint are true. *Wolcott*, 635 F.3d at 763. The Court will not, however, "accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010) (internal quotation omitted). Similarly, legal conclusions masquerading as factual conclusions need not be treated as true. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995); *see also Iqbal*, 556 U.S. at 678. Although all well-pleaded facts are viewed in the light most favorable to the plaintiff, *Turner*, 663 F.3d at 775; *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009), the Court "will not strain to find inferences favorable to the plaintiff." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (internal citations and quotations omitted). Therefore, to avoid a dismissal for failure to state a claim, a plaintiff must plead specific facts. *Dorsey*, 540 F.3d at 338.

### III.

Plaintiffs bring claims against all defendants for wrongful death, survivorship, and violations of the Fourth Amendment and Fourteenth Amendment. (Instrument No. 30).

### A.

Plaintiffs bring all claims against H.I.G. Capital, alleging that H.I.G. Capital is the alter ego of WellPath. (Instrument No. 30 at 10-11). H.I.G. Capital argues that it is not the alter ego of WellPath and, therefore, all claims against it should be dismissed. (Instrument No. 33 at 7). H.I.G. Capital contends that, even if it were, Plaintiffs' claims should be dismissed because the Amended Complaint constitutes an improper "shotgun" pleading and Plaintiffs fail to state a claim against H.I.G. Capital. *See generally* (Instrument No. 33).

Under Texas law, "when an entity's corporate form is at issue, courts standardly hold that the law of the state of incorporation of that entity applies to determine whether its corporate form should be disregarded . . . ." *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 238 F. Supp. 3d 799, 839 (S.D. Tex. 2017), *aff'd sub nom. Lampkin v. UBS Fin. Servs., Inc.*, 925 F.3d 727 (5th Cir. 2019). H.I.G. Capital was incorporated in Delaware and, thus, the Court applies Delaware law. However, because the alter-ego doctrine under Texas and Delaware are the same, the parties cite to relevant authority under both jurisdictions and the Court does the same.

Courts disregard the corporate fiction—even when the corporate and individual entities have been kept separately—when the corporate form has been used as an unfair device to achieve an inequitable result. *See Bell Oil & Gas Co. v. Allied Chemical Corp.*, 431 S.W.2d 336, 340 (Tex. 1968). Delaware courts rarely pierce the corporate veil and only do so in the interest of justice, "when such matters as fraud, contravention of law or contract, public wrong, or equitable considerations among members of the corporation require it . . ." *In re Phillips Petroleum Sec. Litig.*, 738 F. Supp. 825, 837 (D. Del. 1990) (citing *Pauley Petroleum, Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del. Supr. 1968). The alter ego theory is one way of piercing the corporate veil and occurs when there is "such unity between corporation and individual that the corporation has ceased to be a separate entity." *Country Village Homes, Inc. v. Patterson*, 236 S.W.3d 413, 428 (Tex. App. 2007). Alter ego is "shown from the total dealings of the corporation and the individual, including the degree to which . . . corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Hall v. Timmons*, 987 S.W.2d 248, 250 (Tex. App. 1999) (internal citations omitted).

H.I.G. Capital is a private equity firm that oversees investment portfolios of numerous private equity funds, one of which relates to WellPath. (Instruments No. 30 at 10; No. 33 at 7). Plaintiffs argue that H.I.G. Capital is WellPath's alter ego because it has exclusive control over WellPath. (Instrument No. 40 at 17). In support of this claim, Plaintiffs allege that H.I.G. Capital placed in-house professionals and experts in WellPath. (Instrument No. 40 at 17). However, taking Plaintiffs allegations as true, Plaintiffs fail to create a reasonable inference that H.I.G. Capital exercised complete domination and control such that it is WellPath's alter ego.

Plaintiffs further assert that H.I.G. Capital is an alter ego of WellPath because it is not a separate entity and it "acquired, controlled, managed, and directed WellPath" to provide medical services to persons in jails. (Instrument No. 40 at 17). However, Plaintiffs impermissibly assert conclusory statements, stating what they set out to prove. *See Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010). Even if the factual allegations were true, directing WellPath to provide medical services to inmates in the Jail does not amount to the requisite unity such that H.I.G. Capital and WellPath cease to be separate entities.

In their Response, Plaintiffs additionally argue that H.I.G. Capital is liable under the principal-agent and *respondeat superior* theories of liability. (Instrument No. 40 at 15-16). However, Plaintiffs fail to plead these theories of liability and, even if they did, the facts alleged are insufficient to establish either theory. First, Plaintiffs argue that H.I.G. Capital is liable for WellPath's actions based on their principal-agent relationship, however, Plaintiffs only assert conclusory allegations to support their argument. *See* (Instrument No. 40 at 15). Second, Plaintiffs argue that H.I.G. Capital is vicariously liable for medical malpractice based on state law, yet Plaintiffs had not included a claim for medical malpractice in their Amended Complaint. *See* (Instruments No. 30; No. 40 at 16).

Accordingly, H.I.G. Capital's Motion to Dismiss is GRANTED.

**B.**

Defendants Montgomery County and Sheriff Rand Henderson ("Sheriff Henderson") (collectively, "County Defendants") move to dismiss Plaintiffs' claims because (1) the Complaint was filed outside the statute of limitations, (2) the County Defendants are immune from the state law claims, and (3) the Complaint fails to allege facts to demonstrate that the decedent received inadequate medical care while detained at the Jail. (Instrument No. 43 at 1).

**1.**

County Defendants argue that the two-year statute of limitations bars Plaintiffs' § 1983 claims. (Instrument No. 43 at 4).

No federal statute of limitations exists for actions brought pursuant to 42 U.S.C. § 1983. Consequently, federal courts defer to the forum state's general personal injury limitations period. *See Owens v. Okure,* 488 U.S. 235, 249-50 (1989); *Pedraza v. Jones*, 71 F.3d 194, 195 n.1 (5th Cir. 1995). In Texas, the applicable period is two years after the day the cause of action accrues in an action for wrongful death. Tex. Civ. Prac. & Rem. Code § 16.003(b). "The cause of action accrues on the death of the injured person." *Id.*

Here, Bible died on January 5, 2018. The two-year limitations fell on Sunday, January 5, 2020, and Plaintiffs filed their Complaint on Monday, January 6, 2020. Because the limitations period fell on a Sunday, Plaintiffs were entitled to filing suit the following Monday. *See* Tex. Civ. Prac. & Rem. Code § 16.072. Thus, the statute of limitations does not bar Plaintiffs' § 1983 claims.

Accordingly, County Defendants' Motion to Dismiss Plaintiffs' § 1983 claims based on the statute of limitations is DENIED.

**2.**

In Plaintiffs' Response, Plaintiffs clarify that both wrongful death and survivorship claims are brought pursuant to § 1983, not the Texas Tort Claims Act. (Instrument No. 44 at 16). Additionally, Plaintiffs argue that, though Montgomery County is the named defendant, these § 1983 claims are brought against Montgomery County's employees. (Instrument No. 44 at 16).

Section 1988 incorporates the Texas wrongful death and survival statutes. *See Rodgers v. Lancaster Police & Fire Dept.*, 819 F.3d 205, 209 (5th Cir. 2016). Section 1988 states that state common law fills in the gaps in administration of civil rights suits when federal law fails to provide suitable remedies and punish offenses. *See* 42 U.S.C. § 1988; *Pluet v. Frasier*, 355 F.3d 381, 383-84 (5th Cir. 2004). Accordingly, so long as standing is established, a plaintiff may bring § 1983 claims based on state wrongful death and survivorship statutes. *See Pluet*, 355 F.3d at 384.

While Plaintiffs unambiguously brought a § 1983 survivorship claim against County Defendants, Plaintiffs' Amended Complaint indicates that the wrongful death claim is exclusively pursuant to Texas Civil Practice and Remedies Code § 71.004(c). (Instrument No. 30 at 27-28). Plaintiffs' Amended Complaint includes only a sentence stating County Defendants are vicariously liable for wrongful death and survival claims pursuant to § 1983. (Instrument No. 30 at 27 ¶ 152). This sentence provides no factual allegations to draw the reasonable inference that either County Defendants are vicariously liable for Bible's constitutional deprivation. Furthermore, a municipality, such as Montgomery County, cannot be held vicariously liable under § 1983 for its employees' conduct. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978). Thus, Plaintiffs' § 1983 wrongful death and survival claims fail.

Accordingly, County Defendants' Motion to Dismiss based on the § 1983 wrongful death and survival claims is GRANTED. (Instrument No. 43).

**3.**

To the extent that Plaintiffs still intended to bring state law claims for wrongful death and survivorship, the Court finds that Plaintiffs failed to state a claim against County Defendants.

**i.**

County Defendants argue that Plaintiffs are barred from bringing wrongful death and survivorship claims against Montgomery County. (Instrument No. 43 at 6-10).

First, County Defendants argue that the wrongful death claim against Montgomery County should be dismissed because Montgomery County is not a "person" under the Texas Wrongful Death Act. (Instrument No. 43 at 2, 6). Indeed, a person liable for damages arising from an individual's death must be "an individual, association of individuals, joint-stock company, or corporation or a trustee or receiver of an individual, association of individuals, joint-stock company, or corporation." Tex Civ. Prac. & Rem. Code § 71.001(2). The term "corporation" excludes a county. *See id.* § 71.001(1); *Cnty. of El Paso v. Dorado*, 33 S.W.3d 44, 46 (Tex. App. 2000). Thus, the plain meaning of the statute makes clear that Montgomery County cannot be sued for wrongful death under § 71.004(c).

Second, County Defendants argue that the survival claim should be dismissed because Plaintiffs failed to assert a waiver of governmental immunity. (Instrument No. 43 at 9). Under Texas law, a governmental unit is immune from liability unless the State consents. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). To bring suit against a governmental unit, a plaintiff must assert that a valid waiver of immunity exists. *Id.* County Defendants argue that the § 101.021 waiver fails to apply here. (Instrument No. 43 at 9).

Under the Texas Civil Practice and Remedies Code, a governmental unit can be held liable for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant." Tex. Civ. Prac. & Rem. Code § 101.021(2). Here, Montgomery County is considered a governmental unit. *See id.* However, an allegation of "failure to provide medical care" does not meet the requisite "condition or use of tangible property" under the Texas Tort Claims Act. *See Diaz v. Cent. Plains Reg'l Hosp.*, 802 F.2d 141, 144 (5th Cir. 1986); *Texas Dep't of Corrections v. Herring*, 513 S.W.2d 6, 9 (Tex. 1974). Thus, because the § 101.021 waiver does not apply to this case, Plaintiffs' state survival claim fails.

**ii.**

County Defendants also argue that the Texas Tort Claims Act's election-of-remedies provision precludes Plaintiffs from bringing state law claims against Sheriff Henderson. (Instrument No. 43 at 2, 6-7).

Under the Texas Tort Claims Act, a plaintiff must irrevocably choose to sue either the governmental unit or its employee. *See* Tex. Civ. Prac. & Rem. Code § 101.106(e); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008). If a plaintiff sues both a governmental unit and its employee under the Texas Tort Claims Act, the employee shall be immediately dismissed on the filing of governmental unit's motion. *See* Tex. Civ. Prac. & Rem. Code § 101.106(e); *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 462 (5th Cir. 2010). Furthermore, Section 101.106(f) states,

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the

governmental unit as defendant on or before the 30th day after the date the motion is filed.

Tex. Civ. Prac. & Rem. Code § 101.106(f).

Here, Plaintiffs' wrongful death and survival claims arise from alleged conduct within the scope of Sheriff Henderson's employment, rendering the suit to be against Sheriff Henderson in his official capacity. *See* (Instrument No. 30 at 17). County Defendants also filed a motion to dismiss the wrongful death claim against both entities. *See* (Instrument No. 43 at 6-7). Plaintiffs have also failed to amend their pleadings to name only the governmental unit within 30 days of the filing of County Defendants' motion. Thus, Sheriff Henderson is entitled to immediate dismissal of the wrongful death and survival claims filed against him in his individual capacity.

Accordingly, County Defendants' Motion to Dismiss based on Plaintiffs' state wrongful death and survival claims is GRANTED.

**4.**

Plaintiffs assert § 1983 Fourth and Fourteenth Amendment claims against County Defendants based on municipal and supervisory theories of liability. (Instrument No. 30 at 17-25).

**i.**

Plaintiffs allege that County Defendants adopted WellPath's policies and practices, which led to Bible's constitutional deprivation. (Instruments No. 30 at 17-19, 26). County Defendants move to dismiss the § 1983 municipal liability claim. (Instrument No. 43 at 12-14).

A municipality and other local governmental units are "persons" under § 1983 and may be found liable where the municipality itself causes the constitutional deprivation. *See City of Canton*, 489 U.S. at 385; *Monell*, 436 U.S. at 2035-38. To establish § 1983 municipal liability under *Monell*, a plaintiff must show that "(1) an official policy (2) promulgated by the municipal

policymaker (3) was the moving force behind the violations of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009); *see Bd. of Cnty. Comm'n of Bryan Cnty v. Brown*, 520 U.S. 397, 400 (1997). There must be a direct causal link between the municipal policy or custom and the alleged constitutional deprivation. *See Fraire v. City of Arlington*, 957 F.2d 1268, 1277 (5th Cir. 1992). A municipality may also be held liable for a single act or decision of an official with final policy making authority. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).

"Official policy" is defined as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992).

The Fifth Circuit has made clear that the sheriff is the county's final policymaker in the area of law enforcement. *See Colle v. Brazos Cnty.*, 981 F.2d 237, 243 (5th Cir. 1993). Here, Montgomery County can be held accountable for the illegal or unconstitutional actions or decisions of Sheriff Henderson. Plaintiffs allege that Sheriff Henderson delegated his duty to provide adequate medical care to a private contractor. (Instrument No. 30 at 17 ¶ 98). Because of this delegation, Plaintiffs argue, Sheriff Henderson adopted the policies set by WellPath, thereby causing Bible's constitutional deprivation. (Instruments No. 30 at 17, 26; No. 44 at 13). However, while Plaintiffs may take issue with WellPath's polices or practices, Sheriff

Henderson's decision to contract out medical care was not illegal or unconstitutional. Therefore, no liability arises from Sheriff Henderson's decision to contract with WellPath.

Additionally, Plaintiffs insufficiently allege that Bible's constitutional deprivation was the direct result of Montgomery County's policies. Plaintiffs allege that Montgomery County adopted the policies and practices of WellPath and failed to monitor the administration of WellPath's contract at the Jail. (Instrument No. 30 at 26 ¶ 149). Plaintiffs also allege that Montgomery County allowed WellPath to reduce its expenditures, which resulted in substandard care. (Instruments No. 30 at 15 ¶ 84; No. 44 at 13). However, these factual allegations, taken as true, fail to demonstrate that Montgomery County's official policies and customs were the direct causal link to Bible's constitutional deprivation. Therefore, Plaintiffs have failed assert sufficient factual allegations to reasonably infer that County Defendants are liable under *Monell*.

### ii.

Plaintiffs also assert § 1983 supervisory liability claims for failure to train or supervise against County Defendants. (Instrument No. 30 at 25). Plaintiffs allege that Montgomery County failed to train the Jail's staff on recognizing symptoms of sepsis and when to transport an inmate for time-sensitive medical care. *Id.* at 21. Plaintiffs also generally allege that County Defendants failed to train and supervise the staff, officers, contractors, and agents of the Jail. *Id.*

To establish a § 1983 failure to train or supervise claim, the plaintiff must allege facts that show: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009); *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001) (applying the elements to a sheriff). The inadequacy of training must be blatant

and obviously likely to cause a constitutional violation. *Snyder v. Trepagnier*, 142 F.3d 791, 798-99 (5th Cir. 1998). Plaintiff must allege a pattern of similar violations for the lack of training or supervision to constitute deliberate indifference. *See Thompson*, 245 F.3d at 459. Actions and decisions by officials that are merely negligent, erroneous, or ineffective do not amount to deliberate indifference of a municipal actor. *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).

Here, Plaintiffs merely assert conclusory allegations and generally allege that County Defendants failed to train Jail staff and nurses responsible for Bible's medical care. (Instrument No. 30 at 22-23, 25). Aside from alleging that another inmate had previously died from influenza, Plaintiffs fail to allege any facts indicating that there was a pattern of failure to recognize symptoms of sepsis and to transport inmates to medical facilities for time-sensitive medical care. Taking Plaintiffs' alleged facts as true, the Court is unable to reasonably infer that a pattern of similar violations existed, constituting deliberate indifference. Thus, Plaintiffs fail to allege a failure to train or supervise claim.

Accordingly, County Defendants' Motion to Dismiss is GRANTED.

**IV.**

For the foregoing reasons, **IT IS HEREBY ORDERED** that H.I.G. Capital's Motion to Dismiss is **GRANTED**. **(Instrument No. 33).**

It is **FURTHER ORDERED** that County Defendants' Motion to Dismiss is **GRANTED**. **(Instrument No. 43).**

The Clerk shall enter this Order and provide a copy to all parties.

SIGNED on this ___27th___ day of September, 2020.

**VANESSA D. GILMORE**
**UNITED STATES DISTRICT JUDGE**